EMER GROVE, Respondent, v. L. W. GROVE, Appellant.

St. Louis Court of Appeals, February 21, 1899.

Practice, Appellate: DIVORCE. In the case at bar it is the duty of the appellate court to review the evidence, and to award such judgment as the trial court should have awarded.

*Appeal from the Lawrence Circuit Court.*—HON. J. C. LAMSON, Judge.

DIVORCE GRANTED TO APPELLANT.

WM. B. SKINNER and HENRY BRUMBACK for appellant.

It can scarcely be seriously contended that plaintiff has shown such "indignities as to render her condition intolerable" to the extent to entitle her to a divorce. "Indignities must be frequent and not isolated, and they must be of such a nature as to tend to the subversion of the family relation." Webb v. Webb, 44 Mo. App. 229. By this standard (if, perchance, she has shown any "indignities" whatever) the plaintiff has not made a case. "The wife is bound to follow the fortunes of the husband, and to live where he chooses to live, and in the style and manner which he may adopt." Deschodt v. Deschodt, 59 Mo. App. 102; Messenger v. Messenger, 56 Mo. 329. Having shown that plaintiff had deserted him without reasonable cause, defendant is entitled as of legal right to a decree. "Divorce is a legal right, and, where the facts entitling either party to it exist, the courts have no discretion to deny it." Morris v. Morris, 60 Mo. App. 86; Deschodt v. Deschodt, 59 Mo. App. loc. cit. 105.

NORMAN GIBBS and SAMP. JENNINGS for respondent.

"A person can not be injured in a legal sense by a state of things which he has voluntarily produced and continued,

and to which he freely consents." Dwyer v. Dwyer, 16 Mo. App. 427. Alimony:—The court may hear and determine a motion for alimony *pendente lite,* at the same time, and with the hearing on the merits of the divorce proper. Adams v. Adams, 49 Mo. App. 598. "Where an application for alimony in the nature of suit money is made by a wife, suing for a divorce, it will be granted as a matter of course, unless certain things which preclude that right on settled law, are made to appear. One of these is that the husband and wife are still living together in the same residence." Adams v. Adams, 49 Mo. App. 599. In the case at bar, plaintiff's motion for alimony was filed pending the suit, and nine days before the trial of the case, and the husband and wife were living apart, and reasonable alimony must "be granted as a matter of course." Adams v. Adams, *supra.* The court below decided that nothing appeared to preclude plaintiff from her alimony in this case, but "he allowed her only $25 for her attorneys' fees, and only $50 for the maintenance of herself and child. Plaintiff proved that the defendant paid his attorneys $200 for their services for him in this case, and proved that their services were worth that sum. To allow plaintiff's attorneys only $25 is grossly insufficient.

BLAND, P. J.—This is a suit for divorce, brought by the wife. In her petition she alleges sundry indignities. The answer is a specific denial of the indignities charged and a cross-bill setting out counter-charges of indignities and the charge of abandonment without just cause or excuse of over five years duration. At the time of the marriage, July 23, 1891, the defendant was a widower, with two children by a former wife, a girl seventeen years of age and a boy much younger, age not given. For the first five or six weeks of the marriage, during the honeymoon, plaintiff and defendant seem to have agreed and got on without any difficulty, but on August 17, following the marriage, their troubles began by the

wife refusing to prepare or assist in preparing a meal for threshers, who had arrived at defendant's farm at his request to thresh his grain; instead of preparing the meal as requested by her husband, she picked up her bonnet and walked off to her father's house four miles away, without the knowledge or consent of her husband; on the following day she went to a picnic; very early in the morning of the nineteenth Grove went after her; she did not return with him, but did return in the afternoon accompanied by her father. Plaintiff's excuse for refusing to prepare the meal was that there was not sufficient cooking vessels and dishes on the place for the purposes; defendant says they were a little short, but he procured the assistance of a neighboring woman, borrowed a few dishes and cooking vessels, and with these, the evidence is, that the neighboring woman and defendant's daughter in a little while got a bounteous meal for the threshers. Plaintiff's conduct in this matter is indefensible and her excuse is extremely flimsy. Her refusal or neglect to cook meals for the family, after August 17, was of very frequent occurrence; the defendant was often compelled to prepare the breakfast, and not infrequently when he and his hired help would come in from farm work for the noon meal, he would find no table set and a cold stove; on such occasions he would himself prepare the meal, but made no fuss or complaint about it. On another occasion after August 17, the plaintiff became angry at defendant for a very trivial cause, threw a knife at him, and pelted him with apples. The defendant's daughter was attending school; when she returned of evenings she would find the dinner dishes to wash, and then have to prepare supper and wash the supper dishes; the defendant before rising one morning asked his wife if she could not wash the dinner dishes, that it was too much for his daughter; the plaintiff made no answer, and did not get up to prepare breakfast; defendant and his daughter proceeded to get the breakfast; plaintiff arose, put on her clothes and started up the road

Grove v. Grove.

away from home; defendant went after her and persuaded her to go back, and took hold of her arm and they walked a few paces toward the house, when plaintiff became angered at some remark made by defendant; parted with him and sat down on the side of the road; defendant returned and resumed the preparation of the meal; about the time it was ready defendant's daughter asked "is she (referring to plaintiff) sitting out there yet;" at that moment plaintiff stepped into the door, jumped at the girl, with the exclamation "you devil," caught her by the ear, in which a bob was worn, and tore and lacerated it. Defendant interfered and stopped any further assault, and after this the daughter left home and resided with her aunt. The final scenes of this unhappy marriage were enacted a few days before, and on February 6, 1892, the date of the final separation, the defendant had an enlarged photograph or painting of his first wife framed and hung on the walls of the sitting and bedroom of himself and wife; also a tintype picture of her in an album. The painting had been hung in the room by direction of the plaintiff; she says she once asked defendant to hang it in his daughter's room; about February 2, 1892, plaintiff took an old excelsior mattress out of the house and burned it, the defendant being absent; on the evening of that day or of the next he was informed of the burning of the mattress by his son. He says that he was vexed when he learned that the mattress had been burned and went to plaintiff's bed where she was lying and asked her why she had burned it; she says she told him she burned it because it was dirty, wornout, and worthless; he says she made him no answer at all; defendant then went into the room and slept with his boy; plaintiff says he stated he would sleep with her no more; he says he went to sleep with the boy because the boy was afraid to sleep off in a room by himself, the hired man with whom he usually slept, being away; early in the night the hired man came in and defend-

ant told him of the burning of the mattress, and in the conversation said his wife was a brute or acted like a brute; plaintiff heard this remark, whereupon she took the tintype picture of defendant's first wife and tore it in two and took down the other one from the wall, took up a fire shovel and went out on the porch with the evident intention of "smashing" the picture. The defendant anticipating her purpose met her on the porch and induced her to give up the picture, which he took to another room and kept it in there over night; on the sixth day of the month defendant and his hired hand returned from their work to the residence for dinner; when they arrived they found a cold stove and no dinner prepared; the plaintiff was in her room occupying herself by sewing on a dress; defendant prepared dinner, and when it was ready, invited the plaintiff to "sit up" to the table; she did so, but took offense either at the form of the invitation or at the manner in which it was given, and in a few minutes asked the defendant if he had gone to Mississippi the night before, referring to a previous conversation had with defendant about cheap lands in that state; the defendant replied that he didn't go on a fire shovel," whereat the plaintiff became enraged, jumped up from the table, grabbed the fire shovel, and said, "I will break that picture or die," and started for the door; the defendant intercepted her, took the shovel from her and took hold of her and either pushed or laid her down; plaintiff's evidence is that he pushed her down and fell on her and hurt her back and arms; defendant's evidence is, and he is corroborated by his hired hand who was present, that he laid her down gently, did not fall on her nor hurt her; when plaintiff arose defendant was standing with his back against the door, and there being no other means of egress from the house she jumped out of the window and went through a rain a half mile to a neighbor's house, sent for her father to come after her, and

has remained away from defendant ever since. There is evidence that the plaintiff on several occasions threatened to have defendant "done up" by her two brothers. Two disinterested witnesses testified that at the picnic on August 18, she said she would rule the defendant or ruin him; another witness testified, and she is not contradicted, that plaintiff stated to her that she had taken defendant's picture from an album and thrown it in the fire, and said—to use the words of the witness—that "she was glad to see the old devil burn." Plaintiff's evidence, if it is at all to be believed, established most of the indignities alleged in her petition, but all that is material in her evidence is denied by the testimony of the defendant, and he is corroborated by every witness who testified to the merits, while the plaintiff is not corroborated by anyone, but as to several important portions of her testimony she is flatly contradicted by disinterested witnesses, not akin to either party. Another noticeable fact to be considered is that defendant proved a good character as a peaceable and quiet man; the plaintiff offered no witnesses on the question of character. It is in evidence that plaintiff was *enciente* when she abandoned the home of the defendant, and was immediately thereafter threatened with miscarriage. On March 25 she gave birth to a child prematurely born in the opinion of the attending physician, but the child lived and was living on the day of the trial, its mother having custody of it. The defendant has not contributed anything to the support of this child since its birth, nor anything to the support of the mother, who is without means, and who with her child has been dependent upon, and supported by her father. The defendant has failed to do his duty toward this child; the laws of nature and of the land both demand that he should support his offspring, and he has offered no excuse whatever for this sad neglect of duty. He should be compelled to perform this duty in the future. The pregnancy of the plaintiff was urged on the oral argument by her able counsel as

an excuse for, or palliation of her misdeeds. This argument would have great weight with us, if the misconduct had ceased with the period of pregnancy, for it is a well known pathological fact that the mental condition of women in this condition is frequently abnormal which is manifested by outburst of passion for trivial causes, but unfortunately the change of her physical condition has not produced any change in her conduct toward the defendant; she has had five years to correct the error of her abandonment, and in which to return or offer to return to defendant and to resume the discharge of her marriage vows made to him, yet she has neither returned nor offered to return, hence we conclude that pregnancy had but little, if any, influence over her conduct.

The trial court sustained a motion for alimony and allowed plaintiff $50 pending the suit and $25 attorney's fees and dismissed both the bill and cross-bill and taxed the costs to defendant. Plaintiff offered evidence

ALIMONY and attorney's fees. tending to prove that $100 would be a reasonable attorney's fee in the case, and evidence that the defendant was possessed of unincumbered real and personal property worth from $3,000 to $3,500. Both parties appealed. The alimony should be double and the attorney's fees should be quadrupled.

It is the duty of this court to review the evidence and to award such judgment as the trial court should have awarded. State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216. We have set out the important facts in the case, from which it seems to us that the evidence is clear and conclusive that the defendant is the injured and innocent party, and that at least one of the statutory grounds for a divorce set up in the cross-bill—desertion—is clearly established by the great weight of the evidence. That plaintiff abandoned the defendant on February 6, 1892, stands admitted; for this abandonment she had no just cause, nor any excuse, except the

ABANDONMENT. one she made for herself by her own misconduct, wherefore it is considered and adjudged

by this court that the defendant is the innocent and injured party, and that the charge of abandonment made by the cross-bill against the plaintiff is established by the evidence, for which cause it is considered and adjudged that the defendant be and he is hereby divorced from the bonds of matrimony heretofore contracted with the plaintiff, and that he be restored to all of his rights as a single person; that plaintiff be allowed $100 alimony pending suit and $100 attorney's fees for prosecuting said suit, to be paid to the clerk of the Lawrence circuit court on or before June 1, 1899, and in default that execution issue therefor; there being no evidence upon which to award the custody of the infant child of plaintiff and defendant, it is considered that no award of such custody be made. The plaintiff being without means to pay costs it is considered that the costs of the suit and of the appeal be taxed to defendant and that execution issue therefor. All concur.